UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 15-2539-GW(DTBx)** | Date | January 30, 2017 |
| Title | *Nicole Holmes, on behalf of R.O. v. Bright Beginnings CDC, et al.,* | Page | 1 of 11 |

Present: The Honorable   **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | None Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:  IN CHAMBERS - DECISION AFTER TRIAL**


**I. Background**

On September 22, 2015, plaintiff Nicole Holmes ("Holmes") filed an action on behalf of her daughter R.O. against defendants Bright Beginnings CDC ("Bright Beginnings") and Carrina Patu ("Patu") asserting a single cause of action for negligence. *See* Docket No. 1-1. It was alleged that "On or around 02-28-2013, [R.O.] was at Bright Beginnings CDC . . . when Catrina Patu fell and tripped while assisting [R.O.] with walking, causing her to fall on top of [R.O.] and cause a fracture to [R.O.'s] right femur." *Id.* at page 4 of 4. On December 14, 2015, the United States removed the lawsuit to federal court pursuant to 28 U.S.C. § 2679(d)(2) on the grounds that Bright Beginnings is a federal instrumentality and Patu was employed there at all relevant times. *See* Docket No. 1.

On October 28, 2016, the parties submitted a Joint [Proposed] Pretrial Conference Order ("Joint PTC Order") which contained, *inter alia*, a list of admitted facts which are delineated *infra*. *See* Docket No. 33-1. On November 3, 2016, the parties filed a Joint Statement of the Case which stated:

> On February 28, 2013, Nicole Holmes dropped her daughter R.O. off at Bright Beginnings, a daycare facility wholly owned and operated by Defendant. R.O. was placed in a classroom that was attended by two different caregivers, one of whom was Catrina Patu. Immediately prior to the subject incident giving rise to this matter, Ms. Patu was assisting R.O. to walk. In the process of doing so, R.O. and Ms. Patu fell. As a result of their fall, R.O. suffered a fractured right femur. Plaintiff alleges that the Defendant, by and through the actions of its employee, Ms. Patu, was negligent, and on that basis seeks non-economic damages resulting from the injuries suffered. Defendant disputes that its employee was negligent, and therefore, contends that it is not responsible for the claims made herein.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | EDCV 15-2539-GW(DTBx) | | Date | January 30, 2017 |
|---|---|---|---|---|
| Title | *Nicole Holmes, on behalf of R.O. v. Bright Beginnings CDC, et al.,* | | Page | 2 of 11 |

*See* Docket No. 36 at 2.

The matter was tried before the Court on November 15, 2016. *See* Docket No. 40. Only two witnesses testified − Holmes and Patu. Only two exhibits were received into evidence − Plaintiff's Exhibit No. 1 (a photograph of R.O.) and Defendant's Exhibit No. 100 (a video of the incident taken by a stationary camera within the Bright Beginnings facility). *See* Docket No. 41. At the close of the trial, the Court requested supplemental briefing on the application of the *res ipsa loquitur* doctrine which neither side had theretofore raised in the litigation. *See* Docket No. 40. Said briefs were filed by the parties and the matter was taken under submission by the Court. *See* Docket Nos. 42-43.

**II. Findings of Fact**

Because the parties have stipulated that "[t]he following facts are admitted and require no proof" (*see* Joint PTC Order, Docket No. 33-1 at 3-4), the Court adopts them as having been proven:

[1]   At all times relevant to this action, the Bright Beginnings Day Care Center, located at the United States Marine Corps base at Twenty-Nine Palms, California, was a nonappropriated fund instrumentality of the federal government.

[2]   At all times relevant to this action, Catrina Patu was an employee of the United States whose actions were within the course and scope of her federal employment.

[3]   On February 28, 2013, R[.]O[.], an approximately 14 month-old child, was enrolled in the base child development center. She was in a [pre-]toddler class of 10 children between the ages of 11-23 months of age.

[4]   Catrina Patu was one of two staff members assigned to R.O.'s classroom.

[5]   At some point, Ms. Patu was assisting R.O. to walk to a group reading area within the room.

[6]   A fall ensued which involved both R.O. and Ms. Patu.

[7]   The right femur of R.O. was fractured as a result of the fall and its aftermath.

[8]   R.O. was transported to Loma Linda Medical Center where she was kept overnight, placed in a Spica cast to immobilize her hip and femur and released the next day. No surgery was required.

[9]   R.O.'s medical care in response to her broken femur was reasonable and necessary.

The Court finds the two witnesses who testified at the trial (*i.e.* Holmes and Patu) to be credible. However, only Patu was present at and involved in the incident. Patu testified, *inter alia*, that: (1) as of the day of the accident, she had worked with pre-toddlers and toddlers at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 15-2539-GW(DTBx)** | Date | January 30, 2017 |
| Title | *Nicole Holmes, on behalf of R.O. v. Bright Beginnings CDC, et al.,* | Page | 3 of 11 |

Bright Beginnings for 12 years; (2) she had received a certificate in early childhood development (which included instruction in children's motor skills and classroom safety, and required yearly refresher courses); (3) of the ten children in the classroom that day, all could walk independently except for R.O.; (4) she assisted R.O. to walk about 20 times each day; (5) R.O. was one of Patu's "regulars" so she was very familiar with R.O.'s limitations; (6) when assisting R.O. at the time of the accident, Patu did not simply pick her up because her intention was to help R.O. in learning to walk; (7) Patu utilized the "hand-over-hand" technique where she would bend over slightly, her legs would be widened, the child centered between her legs (both facing the same direction) and held up by the hands, and when the child moved one leg Patu would correspondingly move her leg in a shuffling motion;[1] (8) at the time of the fall, Patu was looking ahead at where she and R.O. were moving when R.O. suddenly felt like "dead weight" in her hands causing Patu to become unbalanced and then fall forward, whereupon Patu tried to brace herself and roll over sideways to avoid landing on top of R.O.; (9) as a result of the fall, Patu sprained her right ankle; and (10) Patu stated that, when helping a child learn to walk, one must expect that the child is going to drop; but she had never before fallen down while assisting a child to walk.

      At trial, neither side offered any expert testimony as to the sufficiency or inadequacy of any of the elements of Bright Beginnings's operations or as to Patu's interactions with R.O.

      The Court has viewed (at least 15 times) the video from the security camera located in the room where the incident occurred. *See* Trial Exhibit 100. The camera appears to use a "fisheye" lens which somewhat distorts the image but gives a wider range of coverage. The relevant action appears at the top right hand corner of the frame. At the beginning of the video (which has a time stamp on the bottom of the screen of "08:20:04"), Patu appears on the left side of the screen assisting a child standing on a stool at the sink area, lifting him and placing him onto the floor between her legs, and the child walks away. Thereafter, Patu cleans up the sink area, wipes off a table top, and collects trash items. At the time surrounding Patu's falling with R.O. (during the period marked as "08:22:25" to "08:22:51" on the exhibit), (1) Patu is initially going around the room (from left to right on the screen) picking up items left on the floor and placing them into bins; (2) she walks near to where there is a changing table; (3) she bends over to pick up R.O. who is on the floor; and (4) she lifts R.O., turns, places R.O. in front of her and, while holding onto R.O., takes about three steps and falls. Because there is low shelving in front of the area where Patu and R.O. were walking at that point, one cannot actually see what exactly caused Patu to fall.

### III. Discussion
    A.  <u>Applicable Law</u>

---
[1] It is observed that Patu's "hand-over-hand" technique is very similar to the method which Holmes testified she used at home in teaching R.O. how to walk.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 15-2539-GW(DTBx)** | Date | January 30, 2017 |
| Title | *Nicole Holmes, on behalf of R.O. v. Bright Beginnings CDC, et al.,* | Page | 4 of 11 |

1. *Law as to Negligence*

Under California law, in order to establish a claim for negligence, a plaintiff must prove by a preponderance of the evidence: "a legal duty of care, breach of that duty, and proximate cause resulting in injury."  *Kesner v. Superior Court*, 1 Cal. 5th 1132, 1158 (2016).  "The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion. [Citations.]  Whether this essential prerequisite to a negligence cause of action has been satisfied in a particular case is a question of law to be resolved by the court."  *Centinela Freeman Emergency Med. Assocs. v. Health Net of Cal.*, 1 Cal. 5th 994, 1012 (2016) (quoting *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 397 (1992)).  As noted in 6 *Witkin, Summary of California Law* (10th ed. 2005) *Torts* § 835 at 53:

> The "legal duty" of care may be of two general types: (1) the duty of a person to use ordinary care in activities from which harm might reasonably be anticipated . . . . (2) An affirmative duty where the person occupies a particular relationship to others . . . .  In the first situation, the person is not liable unless he or she is actively careless; in the second, the person may be liable for failure to act affirmatively to prevent harm.  [Citations omitted.]

As delineated in the Judicial Council of California Civil Jury Instruction ("CACI") No. 401, the basic description of the standard of care owed to others is:

> Negligence is the failure to use reasonable care to prevent harm to oneself or to others.  A person can be negligent by acting or by failing to act.  A person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation.

Additionally, as between an adult and a child, "An adult must anticipate the ordinary behavior of children.  An adult must be more careful when dealing with children than with other adults."  CACI No. 412.

The legal duty of "affirmative" care in the present situation was articulated by the California Supreme Court over fifty years ago.  As stated in *Fowler v. Seaton*, 61 Cal. 2d 681, 688 (1964):

> [A]s a matter of common knowledge, [pre-kindergarten nursery] schools are primarily intended to give the children an opportunity to engage in supervised group play and other supervised activities.  Such schools hold themselves out as

Case 5:15-cv-02539-GW-DTB Document 44 Filed 01/30/17 Page 5 of 11 Page ID #:141

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | EDCV 15-2539-GW(DTBx) | Date | January 30, 2017 |
|---|---|---|---|
| Title | *Nicole Holmes, on behalf of R.O. v. Bright Beginnings CDC, et al.,* | Page | 5 of 11 |

furnishing supervision for the children. Furnishing supervision is the basic service for which these schools charge. It is their main function. The duty owed by the operator of such a school to the students in attendance is substantially different in degree from that owed by schools whose primary function is education, where the children are much older, and where supervision is incidental. The supervision required must be commensurate with the age of the children and with their activities.

*See also Doe v. Superior Court*, 237 Cal. App. 4th 239, 246 (2015) ("As to parents and minor, [defendant] acted as a daycare provider, creating a special relationship which imposed a duty to exercise reasonable care to prevent harm to minor while attending the summer camp.").

    2. *Res Ipsa Loquitur*
As stated in *Gicking v. Kimberlin*, 170 Cal. App. 3d 73, 75 (1985):

> Res ipsa loquitur is a rule of evidence allowing an inference of negligence from proven facts . . . . It is based on a theory of "probability" where there is no direct evidence of defendant's conduct, . . . permitting a common sense inference of negligence from the happening of the accident . . . . The rule thus assists plaintiffs in negligence cases in regard to the production of evidence.
> The applicability of the doctrine depends on whether it can be said the accident was probably the result of negligence by someone and defendant was probably the person who was responsible . . . . In the absence of such probabilities, there is no basis for an inference of negligence serving to take the place of evidence of some specific negligent act or omission. [Citations omitted.]

*See also Fowler*, 61 Cal. 2d at 686. In 1970, the California legislature enacted California Evidence Code § 646 which codified the res ipsa loquitur doctrine. *See* 1 Witkin, *California Evidence* (5th ed. 2012) § 120 at 288.

The California Supreme Court has summarized the res ipsa loquitur doctrine as follows:

> [C]ertain kinds of accidents are so likely to have been caused by the defendant's negligence that one may fairly say "the thing speaks for itself." The Latin equivalent of this phrase, "res ipsa loquitur," was first applied to a barrel of flour that rolled out of the window of the defendant's warehouse onto the plaintiff. (*Byrne v. Boadle* (1863) 159 Eng.Rep. 299, 300.) As later courts repeated the phrase, it evolved into the name of a rule for determining whether circumstantial

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 15-2539-GW(DTBx)** | Date | January 30, 2017 |
| Title | *Nicole Holmes, on behalf of R.O. v. Bright Beginnings CDC, et al.,* | Page | 6 of 11 |

> evidence of negligence is sufficient. The procedural and evidentiary consequences that follow from the conclusion that an accident "speaks for itself" vary from jurisdiction to jurisdiction.
>    In California, the doctrine of res ipsa loquitur is defined by statute as "a presumption affecting the burden of producing evidence." (Evid. Code, § 646, subd. (b).) The presumption arises when the evidence satisfies three conditions: "'(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.'" (*Ybarra v. Spangard* (1944) 25 Cal.2d 486, 489, quoting Prosser, *Torts*, p. 295.) A presumption affecting the burden of producing evidence "require[s] the trier of fact to assume the existence of the presumed fact" unless the defendant introduces evidence to the contrary. (Evid. Code, § 604; *see also id.*, § 646, subd. (c).) The presumed fact, in this context, is that "a proximate cause of the occurrence was some negligent conduct on the part of the defendant . . . ." (*Id.*, § 646, subd. (c)(1).) If the defendant introduces "evidence which would support a finding that he was not negligent or that any negligence on his part was not a proximate cause of the occurrence," the trier of fact determines whether defendant was negligent without regard to the presumption, simply by weighing the evidence. (*Id.*, § 646, subd. (c); *see also id.*, § 604.)

*Brown v. Poway Unified Sch. Dist.*, 4 Cal. 4th 820, 825-26 (1993). As further explained in *Howe v. Seven Forty Two Co., Inc.*, 189 Cal. App. 4th 1155, 1162-63 (2010):

> That statute, which is based on a recommendation of the California Law Revision Commission, classified the doctrine as a presumption affecting the burden of producing evidence. Under that classification, when the predicate facts are established to give rise to the presumption, the burden of producing evidence to rebut it shifts to the defendant to prove lack of negligence or lack of proximate cause that the injury claimed was the result of that negligence. As a presumption affecting the burden of producing evidence (as distinguished from a presumption affecting the burden of proof), if evidence is presented to rebut the presumed fact, the presumption is out of the case − it "disappears." But if no such evidence is submitted, the trier of fact must find the presumed fact to be established. As section 604 explains: "The effect of a presumption affecting the burden of producing evidence is to require the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced which would support a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 15-2539-GW(DTBx)** | Date | January 30, 2017 |
| Title | *Nicole Holmes, on behalf of R.O. v. Bright Beginnings CDC, et al.,* | Page | 7 of 11 |

finding of its nonexistence, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption. Nothing in this section shall be construed to prevent the drawing of any inference that may be appropriate."

The Law Revision Commission comments to Evidence Code section 646 are instructive: "If evidence is produced that would support a finding that the defendant was not negligent or that any negligence on his part was not a proximate cause of the accident, the presumptive effect of the doctrine vanishes." (Cal. Law Revision Com. com., 29B pt. 2 West's Ann. Evid. Code (1995 ed.) foll. § 646, pp. 198-201 (Comment).)

B. Analysis

As to Plaintiff's negligence claim, it is clear that − as to the first element – both forms of the legal duty of care were present in this case: *i.e.* (1) the duty of a person to use ordinary care in interactions with others which here − because the interactions were between an adult and a child – required the Defendants to be more careful than when dealing with adults; and (2) an affirmative duty on the part of Defendants as the operator and employee of a day care facility for very young children to provide adequate supervision commensurate with the ages of the children and with their activities. *See* CACI Nos. 401, 412, and *Fowler*, 61 Cal. 2d at 688.

However, while the first element is clearly present, the question arises as to whether the second element (*i.e.* breach of the duty) has been established. In the Joint PTC Order, Plaintiff's argument on this subject was that:

> Testimony will show that Patu's attention was diverted away from R.O. at the time of the subject incident. During that period of inattentiveness, Patu fell onto the infant, the result of which was a fractured femur. Had Patu been paying attention, she would not have fallen onto the child.

Docket No. 33-1 at 5. Defendants' contention was that: "The event at issue was an accident: young children fall or otherwise injure themselves routinely at home or in group settings notwithstanding adult supervision." *Id.* at 9.

At the trial, while Patu did state that − at the time of the accident – she was looking in front of R.O. and herself, that testimony does not demonstrate inattentiveness. It was not negligence (or a violation of any standard of care) for Patu to have temporarily looked up while she was walking with R.O. to see what was in front of them as they were perambulating.[2] There

---

[2] After all, Patu and R.O. were walking in a day facility where nine other children between the ages of 11 and 23 months were about, along with the toys that the children would leave around the room and items of furniture geared for small children also present.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 15-2539-GW(DTBx)** | Date | January 30, 2017 |
| Title | *Nicole Holmes, on behalf of R.O. v. Bright Beginnings CDC, et al.,* | Page | 8 of 11 |

was no evidence from either Patu's testimony or from the video of the accident to show that Patu was looking too long at what was in front of her or otherwise ignoring R.O. at that moment.

Conversely, Defendants' contention (that the event was merely an accident because young children fall even when supervised by adults) likewise is insufficient because simply labelling the matter as an "accident" does not resolve anything. While accidents happen, sometimes accidents are caused (or are otherwise not prevented) by negligence. Moreover, the "accident" herein is not so much about R.O.'s falling down (as everyone admits, children of her age at the time will inevitably do), but rather Patu's falling while assisting R.O. to walk.[3]

Nevertheless, the burden of proof rests on Plaintiff to *initially* prove by a preponderance of the evidence each of the elements of her negligence claim. While the first factor has been established, aside from the accident itself, Plaintiff has not offered enough actual evidence on the issue of Defendants' breach of the duty of care to establish her case.

Normally, "[n]o suggestion of negligence arises from the mere happening of an accident." *Brooks v. Eugene Burger Mgmt. Corp.*, 215 Cal. App. 3d 1611, 1620 (1989). However, in certain cases, the fact of the accident itself plus the existence of other circumstantial evidence can establish negligence under the theory of res ipsa loquitur. *See Shaw v. Pacific Greyhound Lines*, 50 Cal. 2d 153, 156 (1958). That theory "assists plaintiffs in negligence cases in regard to the production of evidence." *Gicking*, 170 Cal. App. 3d at 75. Additionally, "[e]vidence necessary to form the basis for the application of the res ipsa loquitur doctrine need not establish the actual negligent procedures followed by defendant; it is sufficient if it supports an inference of negligence from the fact that the injury occurred." *Hale v. Venuto*, 137 Cal. App. 3d 910, 919 (1982).

As to the application of the res ipsa loquitur doctrine to the present case, reference is made to the California Supreme Court's decisions in *Brown and Fowler*. The *Brown* case involved a plaintiff repairman who slipped and fell while delivering computers to one of the defendant school district's facilities where: (1) there was no indicia as to the cause of the fall, although there was a "fresh slice of lunch meat stuck to the sole of his shoe;" (2) four other persons had used the hallway where the accident occurred that morning and none indicated that they had seen any lunch meat on the hallway floor prior to the incident; and (3) plaintiff himself had made five trips down the hallway before he slipped. The California Supreme Court held that "as a general rule . . . res ipsa loquitur does not apply to slip and fall cases." 4 Cal. 4th at 826. The Court observed that:

---

[3] As noted in *Fowler*, 61 Cal. 2d at 687-88, children of a very young age (in *Fowler*, the child was three years-ten months old) cannot, as a matter of law, be held to be contributorily negligent. Thus, no blame or excuse can be raised in this case because of the fact that, prior to the fall, R.O. suddenly dropped and became (as described by Patu) like "dead weight."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | EDCV 15-2539-GW(DTBx) | Date | January 30, 2017 |
| Title | *Nicole Holmes, on behalf of R.O. v. Bright Beginnings CDC, et al.,* | Page | 9 of 11 |

> Experience teaches that slips and falls are not so likely to be the result of negligence as to justify a presumption to that effect. As Prosser and Keeton explain, "there are many accidents which, as a matter of common knowledge, occur frequently enough without anyone's fault . . . . [A]n ordinary slip and fall . . . will not in [itself] justify the conclusion that negligence is the most likely explanation; and to such events res ipsa loquitur does not apply." (Prosser & Keeton, *Torts* (5th ed. 1984) § 39, p. 246.)

*Id.; see also Wright v. United States*, No. 2:15-CV-0305-TOR, 2016 WL 4545519 at *5 (E.D. Wash. Aug. 31, 2016) ("the fact that Mr. Wright fell may have happened for a number of reasons and is not obviously the result of another's negligence. People fall every day and not necessarily as a result of the negligence of another. The fact pattern alleged in the Amended Complaint does not support a 'reasonable and legitimate' inference of negligence, *i.e.* a sponge left in the body or the amputation of the wrong limb, but instead, requires 'conjectural' inference on part of the defendants' alleged negligence. Thus, Plaintiffs' inference of negligence claim does not meet the first criteria of the res ipsa [loquitur] doctrine.").

    The question arising from the ruling in *Brown* (that the res ispa loquitur doctrine generally is not appropriate in slip and fall cases), as concerns this lawsuit, is whether that holding only applies in regard to the inference of negligence on the part of other parties or whether it can apply to the person who is the one who falls. In other words, in *Brown*, the doctrine was not deemed applicable so as to raise the specter of negligence on the part of the defendant school district because slip and falls (even those involving lunch meat on soles of shoes) occur frequently enough without anyone's fault and thus the first element of the doctrine (*i.e.* that the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence) is not established. But what if the plaintiff in *Brown* had slipped and fallen on top of a student in the hallway; could the student sue the repairman and the school district for negligence using the res ipsa loquitur doctrine? It would appear to this Court that the answer should be "no" (the student cannot use the doctrine to sue the repairman) because (as stated in *Brown*) a "slip and fall" is a type of accident that "as a matter of common knowledge, occur *frequently* enough without *anyone's* fault." 4 Cal. 4th at 826 (emphases added). Thus, the doctrine is inapplicable − not only as to the owner of the premises where the fall occurs, but also as to the person who falls.

    As noted above, Plaintiff has not proffered sufficient direct evidence of a breach by the Defendants of their duties to R.O. Therefore, if the doctrine of res ipsa loquitur were found inapplicable to her negligence claim, she would lose her case.

    However, even assuming *arguendo* that the doctrine could be utilized in this case despite the holding in *Brown*, the effect of that application would simply be that, with the introduction of the evidence of the accident: (1) the Plaintiff would be deemed to have met her burden of proof

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | EDCV 15-2539-GW(DTBx) | Date | January 30, 2017 |
| Title | *Nicole Holmes, on behalf of R.O. v. Bright Beginnings CDC, et al.,* | Page | 10 of 11 |

of establishing the presumption that R.O.'s injury was caused by Defendants' negligence; (2) the burden of proof would shift to the Defendants to prove lack of negligence or lack of proximate cause that the injury claimed was a result of that negligence; (3) if the Defendants failed to submit any evidence, then the trier of fact must presume the existence of the negligence; and (4) if the Defendants do offer evidence to rebut the presumption, the presumption "disappears" and the trier of fact engages in the normal weighing of the evidence to determine if Plaintiff has established negligence by a preponderance of the evidence. *See Howe*, 189 Cal. App. 4th 1162-63; Cal. Evid. Code § 646(c). As germane to the present situation, the California Supreme Court's decision in *Fowler* is highly relevant.

In *Fowler*, the trial court's grant of a nonsuit as to plaintiff's negligence claim based on res ipsa loquitur was reversed. Plaintiff's parent had delivered her to nursery school in the morning and, after she was picked up in the evening, she developed a serious injury. The defendant initially attempted to conceal the injury and later provided an inferably false explanation of how the injury occurred (accusing a five year old boy of striking plaintiff). Plaintiff had a medical expert (while defendant had none) who opined that the cause of plaintiff's injury was a blow to the head which could not have been rendered by a child of five years of age. The California Supreme Court held that the doctrine of res ipsa loquitur was applicable because:

> While it may be common knowledge, as contended by defendant, that in the normal course of play children suffer bumps, bruises, and scratches, it certainly is not a matter of common knowledge that children normally come home from a nursery school with concussion of the brain and crossed eyes. If that were "normal" or "usual," nursery schools would not stay in business very long. Such a school, as already pointed out, by its very nature, holds itself out as a place where children can be safely left and carefully supervised.

61 Cal. 2d at 690. That Court also held that: "Where, under the evidence, an explanation is called for, if the defendant refuses to explain or gives a false explanation, it is reasonably inferable that the defendant is hiding something which, more probably than not, is his negligence." *Id.* at 689.

The present case is similar to *Fowler* in regards to the setting (*i.e.* a day care/nursery school facility), the existence of an unusual occurrence (here a day care worker's falling with a child she is helping to walk), and the applicable law as to the legal duties of care (*i.e.* both the level of care arising from adults dealing with young children and the affirmative obligation of supervision owed by a day care facility to its young charges). However, procedurally, this case is very different.

First, Defendants here have not proffered (or attempted to proffer) any false or misleading evidence. Second, neither side has offered any expert evidence as to an essential

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 15-2539-GW(DTBx)** | Date | January 30, 2017 |
| Title | *Nicole Holmes, on behalf of R.O. v. Bright Beginnings CDC, et al.,* | Page | 11 of 11 |

issue in the case (here, with regard to the incident to establish any levels − or deviations from the appropriate levels − of careful supervision that a day care facility and its employee would owe a toddler). Third, and most importantly, Defendants have proffered sufficient evidence to rebut the res ipsa loquitur presumption of negligence. Patu testified credibly and, if one were to accept her version of the events, there was no breach of any legal duty of care. Fourth, and also very significantly, a video of the accident was provided. Unlike most res ipsa loquitur cases (where the trier of fact must draw inferences about the occurrence of the accident because of a lack of direct evidence on the subject), here one can actually view the incident, although admittedly the video is not entirely clear on the event. However, it is sufficient for the trier of fact to draw certain conclusions in regards to the issues in the case.

       This Court would find that Defendants have presented enough evidence to potentially support a finding that the Defendants were not negligent. As a consequence, the presumptive effect from the application of the res ipsa loquitur doctrine vanishes (*see Howe*, 189 Cal. App. 4th at 1163); and the trier of fact simply weighs the evidence on the issue of negligence (*see Brown*, 4 Cal. 4th at 826). As already noted above, Plaintiff has not offered enough actual evidence on the issue of Defendants' breach of the duty of care to establish her case.

### IV. Conclusion

       After considering all of the testimony at trial, the exhibits, the arguments of counsel and the other germane materials in the case file, this Court finds that Plaintiff has not demonstrated by a preponderance of the evidence that the Defendants were negligent in this matter. Thus, verdict is rendered in favor of the Defendants and against Plaintiff. Defendants shall file a (Proposed) Judgment forthwith.